GENERAL MOTORS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52824. Promulgated February 19, 1937.

*James A. Taylor, Esq.,* and *Frank B. Schlosser, Esq.,* for the petitioner.

*Elden McFarland, Esq., John F. Greaney, Esq.,* and *Claude R. Marshall, Esq.,* for the respondent.

OPINION.

STERNHAGEN: The Commissioner determined deficiencies in petitioner's income taxes for 1924, 1925, 1926, and 1927. Those for 1924, 1925, and 1927 have been entirely settled by a stipulation, and paid. For 1926 the deficiency was determined to be $15,342,369.45, and the controversy turns upon whether transactions whereby the petitioner acquired the assets of the Fisher Body Corporation resulted in gain which, under the Revenue Act of 1926, section 203, properly escapes recognition, as contended by petitioner, or resulted in taxable profit by way of a liquidation distribution, as contended by respondent. The facts have been stipulated in detail and need not be specially found. They can be briefly stated. The plan is the same as that considered in *Charles T. Fisher,* 34 B. T. A. 1215.

The petitioner, a Delaware corporation with principal office at Detroit, Michigan, is engaged in the manufacture and sale of automobile parts. In June 1926 it owned 1,402,920 shares, or about 58 percent, of the outstanding common stock of the Fisher Body Corporation, a New York corporation, which manufactured automobile bodies and parts and furnished petitioner with all bodies required by it, under a 10-year contract beginning November 1, 1919. For a 6-month period ending June 30, 1926, the Fisher Body Corporation's sales amounted to about $126,000,000, and about 87.27 percent of its business was done with petitioner.

For reasons germane to its business, petitioner, in the early part of 1926, decided to acquire the assets of the Fisher Body Corporation. After preliminary negotiations, the two corporations adopted a plan whereby, in June 1926, the Fisher Body Corporation trans-

ferred all its assets to petitioner in exchange for 1,600,000 of petitioner's common shares and the assumption by petitioner of all the liabilities of the Fisher Body Corporation. The Fisher Body Corporation immediately distributed the 1,600,000 shares among its shareholders and dissolved. As a shareholder of the Fisher Body Corporation, petitioner received in the liquidation 935,280 of its own common shares, represented by certificate WC 21242.

The 1,600,000 common shares of petitioner which the Fisher Body Corporation received consisted of 638,401 shares of original issue, 26,319 shares of treasury stock, and 935,280 shares represented by certificate WC 21242, which, on June 23, 1926, had been borrowed for 30 days from the General Motors Securities Co., an unaffiliated corporation, for use in carrying out the plan. Petitioner was to return 935,280 shares to the Securities Co. upon receipt by petitioner of its distributive part of the 1,600,000 shares. The stipulation states that it was intended that full title pass from the Securities Co. to petitioner in order that petitioner might pass full title to the Fisher Body Corporation, and it was expected that petitioner would receive back this certificate as its distributive share in the liquidation of the Fisher Body Corporation, and would then return it to the Securities Co. in full satisfaction of its obligation. The same certificate was returned to the Securities Co. on July 1, 1926.

The fair market value of 1,600,000 common shares of petitioner on June 30, 1926, was $237,500,000, or $148\frac{7}{16}$ a share. The fair market value of a share on July 1, 1926, was $147\frac{1}{8}$. The value of its own shares which petitioner received on the liquidation of the Fisher Body Corporation was $138,830,625; the cost of its 1,402,920 shares of Fisher Body Corporation stock was $31,254,825. The Commissioner determined that the difference of $107,575,800 was taxable gain.

The petitioner contends that no gain from the above transactions may be recognized in 1926 because they constituted a statutory reorganization, Revenue Act of 1926, sec. 203 (b) (2)[1] or (3).[2] Reorganization is defined as, among other things, a merger, including the acquisition by one corporation of substantially all the properties of another, sec. 203 (h) (1) (A).[3] The petitioner acquired all the prop-

[1](2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[2](3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

[3](h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *.

erties of the Fisher Body Corporation in exchange for its own shares, and, therefore, so much of what was done falls clearly within the statutory definition of reorganization. *Charles T. Fisher, supra.* The acquisition of the Fisher properties was the paramount object to be achieved, for purely business reasons, and therefore *Gregory* v. *Helvering*, 293 U. S. 465, is inapplicable. What the parties wanted was that petitioner should own and operate the Fisher plant and business as part of its own business, and everything that was done was in adjustment to that end. The borrowing of shares and their transfer, the liquidation and dissolution of the Fisher Corporation, and the return of the borrowed shares, were incidents of this paramount purpose, *Charles T. Fisher, supra.* Therefore, when it appears that the acquisition of the properties is itself a statutory reorganization in which gain or loss escapes recognition, it is not easy to say that the same gain or loss is nevertheless to be recognized in an incidental transaction used in carrying the purpose to completion. And, of course, it is not necessary, or indeed proper, to conclude how this reorganization may affect the taxes of the participants in future years.

This reorganization was planned and accomplished in 1926, when the law of the subject was still uncertain in respects no longer doubtful. Since *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378, it is clear that the absence of liquidation and dissolution does not prevent the recognition of a statutory reorganization. A liquidation which follows but is not essential to a reorganization which is not a merger or consolidation under (A) of the definition, may result in taxable gain under section 201 (c).[4] *Liquidating Co.*, 33 B. T. A. 1173. But where the liquidation and dissolution are essential to the reorganization because the reorganization is by way of merger in its broad sense, *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, they do not serve to justify recognition of gain under section 201, which escapes by virtue of section 203. "Both can have effect, and if one does somewhat overlap the other the taxpayer should not be denied, for that reason, what one paragraph clearly grants him." *Helvering* v. *Minnesota Tea Co., supra.*

If, however, the liquidation of the Fisher Body Corporation be separately regarded, wherein the petitioner, being the holder of

---

[4] (c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of subdivision (g) of section 203 of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

1,402,920 Fisher shares which had cost it $31,254,825, received 935,820 of its own shares, worth $138,830,625, it involves no gain which may be recognized. In this, the situation is in all substantial respects like that in *Helvering* v. *Winston Brothers Co.*, 76 Fed. (2d) 381, a case which had full consideration in the Board, 29 B. T. A. 905; 28 B. T. A. 1248, and was affirmed by the United States Circuit Court of Appeals for the Eighth Circuit.

There is argument by the Commissioner that gain resulted from the transactions with the Securities Co., either because the use and return of the borrowed 935,280 shares is upon analysis similar to a short sale, or because the borrowing created a debt to the Securities Co. in the amount of the value of the shares when borrowed, which was discharged by the shares received from the Fisher Body Corporation in exchange for the Fisher shares, which had a lower cost. Cf. *Kirby Lumber Co.* v. *United States*, 284 U. S. 1. Both of these arguments are based upon concepts of the arrangements with the Securities Co. at variance with the true fact. This was simply a borrowing by petitioner of 935,280 shares to be used for a few days and returned in kind. There was no financial debt, but only a potential liability in damages for failure to return the shares. The return of the shares involved neither gain nor loss. The analogy of a short sale falls because the borrowed shares were not used to effectuate a sale or a covering purchase, but in perfecting a reorganization wherein gain or loss is not to be recognized.

The respondent's determination as to 1926 is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Turner dissents.

---

ARNOLD, dissenting: I agree that the transaction whereby petitioner acquired the assets of the Fisher Body Corporation in exchange for 1,600,000 shares of its stock and received 935,280 shares of its own stock in exchange for 1,402,920 shares of stock which it owned in the Fisher Body Corporation as a liquidating dividend is nontaxable under the reorganization provisions of the statute. I do not agree that when petitioner used the General Motors stock it received in exchange for its Fisher Body stock to satisfy its obligation to the General Motors Securities Co., no taxable gain resulted.

The ultimate question here is whether petitioner realized gain upon the disposition of the Fisher Body stock. Since the exchange of petitioner's Fisher Body stock for assets of the Fisher Body Corporation (which then consisted solely of General Motors stock) was a nontaxable transaction, it is evident that the shares of stock petitioner received for its Fisher Body stock were assets in its hands, and, unless

there is a taxable transaction upon the disposition of the assets (General Motors stock) for which its Fisher Body stock was exchanged, any gain derived from petitioner's investment in Fisher Body stock will never be subject to tax.

In *Charles T. Fisher*, 34 B. T. A. 1215, we had a similar question before us, arising from the same reorganization and dependent on the same basis, with the exception that Charles T. Fisher sold the General Motors stock which he had received in exchange for his Fisher Body stock on the market, while here petitioner used the General Motors stock which it had received in exchange for its Fisher Body stock to satisfy an outstanding obligation to the General Motors Securities Co. Clearly there is no difference in principle in these two transactions. In the *Fisher* case we held the difference between the cost of the Fisher Body stock and the price received for the General Motors stock for which it was exchanged was taxable gain. Had petitioner sold the stock it received for its Fisher Body stock on the market as the taxpayer did in the *Fisher* case, undoubtedly the difference between the cost of its Fisher Body stock and the amount received would be taxable gain, as we held in that case. The majority opinion here holds that no taxable gain was realized on the disposition of the General Motors stock to satisfy a binding and enforceable obligation of petitioner.

I do not think it can be successfully argued that the transaction wherein petitioner used the General Motors stock received in exchange for its Fisher Body stock to satisfy its obligation to General Motors Securities Co. did not constitute a final disposition of its Fisher Body stock. When petitioner obtained the 935,280 shares of stock from the General Motors Securities Co. a valid contractual obligation was created to return an equivalent amount of stock within thirty days, *Provost* v. *United States*, 269 U. S. 443, and the law imposed upon petitioner a legal liability to comply with the agreement or respond in damages for its failure so to do. Profits realized by a taxpayer in paying or satisfying an outstanding obligation give rise to taxable gain. *Twin Ports Bridge Co.*, 27 B. T. A. 346; *Hagan Corporation*, 21 B. T. A. 41; *Carlisle Packing Co.*, 29 B. T. A. 514; *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Helvering* v. *American Chicle Co.*, 291 U. S. 426; *Commissioner* v. *Coastwise Transportation Corporation*, 71 Fed. (2d) 104, reversing 28 B. T. A. 725; certiorari denied, 293 U. S. 595; *Garland Coal & Mining Co.*, 28 B. T. A. 348; affd., 75 Fed. (2d) 663; *Consolidated Gas Co. of the City of Pittsburgh*, 24 B. T. A. 901; *Woodward Iron Co.*, 24 B. T. A. 1050; *Ohio Central Telephone Co.*, 28 B. T. A. 96; *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393; *E. F. Simms*, 28 B. T. A. 988; *Peerless Investment Co.* v. *Commissioner*, 80 Fed. (2d) 427, affirming 30 B. T. A. 491.

Petitioner satisfied its obligation by delivering to the General Motors Securities Co. 935,280 shares of stock it received for its Fisher Body stock. The cost basis of this stock for the purpose of determining gain or loss on sale or other disposition was the cost of the Fisher Body stock. Sec. 204 (a) (6), Revenue Act of 1926. The basis of the decisions of the Board and the courts in the cases referred to above is that the discharge of a solvent taxpayer's obligation for less than the amount due releases assets offset by the obligation, resulting in a corresponding accession to income. The same is equally true when a taxpayer's obligation is discharged by the use of an asset having a cost basis less than the amount of the obligation satisfied. In both instances the net worth of the taxpayer is correspondingly increased to the extent of the difference between the amount of the obligation and what it cost to satisfy it.

Had petitioner discharged this obligation by stock other than by the use of the stock it received for its Fisher Body stock it would have cost it the market price of the stock the day the obligation was satisfied, or $137,603,070 for the 935,280 shares required. This I think is the amount realized by petitioner on disposition of the General Motors stock—a realization of the increase in value of its Fisher Body stock.

The General Motors Securities Co. was not a party to the reorganization or merger and the acquisition by petitioner of the 935,280 shares from it and the discharge of the obligation so incurred were wholly foreign to any part of the reorganization. It was petitioner's method of financing its deal with the Fisher Body Corporation in which it acquired all of the Fisher Body assets.

The fact that the stock certificate which was obtained from General Motors Securities Co. was endorsed in blank when it was delivered to petitioner and used in the several transactions does not render the transaction between the General Motors Securities Co. and petitioner any the less a valid and enforceable obligation, nor does the fact that it was called a loan serve to absolve petitioner from tax on any profit or gain on the delivery to the General Motors Securities Co. of the number of shares required to discharge its obligation. Neither is it material that the obligation to restore the General Motors Securities Co. to the same economic position it was in with reference to the ownership of the stock at the time it was obtained, was not a direct money obligation. It was a definitely ascertainable amount, cf. *A. F. Osterloh*, 13 B. T. A. 713. This satisfies the revenue law for the purpose of determining the realization of gain or loss. The obligation was a liability against petitioner's assets which could be discharged only by assets of equivalent value and that value was the market value of 935,280 shares of General Motors stock on the day the obligation was discharged. The stock used in discharging

the obligation was that acquired in exchange for Fisher Body stock, and can no longer be considered the identical stock obtained from the General Motors Securities Co.

The parties stipulated that the full legal title to the 935,280 shares of General Motors stock passed from the General Motors Securities Co. to petitioner and that the certificate was endorsed in blank to enable petitioner unconditionally to transfer full legal title to the Fisher Body Corporation. The General Motors Securities Co. was completely divested of title to the stock when the stock certificate was delivered to petitioner and petitioner was completely divested of title to the stock when it exchanged the stock for Fisher Body assets.

Title passed to the Fisher Body Corporation in the exchange of its assets for stock and the stock so acquired merged in the assets of the Fisher Body Corporation, which then consisted of 1,600,000 shares of General Motors Corporation stock. There was very definitely a conversion of the stock obtained from the Securities Co. when it was exchanged for Fisher Body assets.

In substance petitioner purchased the assets of the Fisher Body Corporation for 1,600,000 shares of General Motors stock. It is not disputed that the stock and assets acquired were equivalent in value. It owed the Securities Co. 935,280 shares for the shares obtained from it and used in part payment for Fisher Body assets. It paid the obligation by using the stock it received for its Fisher Body stock. It was not a return of the identical stock, nor was it an exchange of stock for stock. It was a satisfaction of the agreement to return an equal number of shares. Petitioner's investment in the Fisher Body Corporation discharged the obligation under this contract.

Clearly the shares of General Motors stock which petitioner received in exchange for its Fisher Body stock were assets in its hands in lieu of its investment in Fisher Body stock and took the same cost basis, and when they were used to satisfy the obligation to the General Motors Securities Co. it constituted a final disposition of petitioner's Fisher Body stock.

A certificate of stock is but the evidence of individual ownership of corporate assets in the proportion the number of shares named bears to the entire number of shares issued. The use of the one certificate here as stipulated was for convenience only. It did not change the effect of the passing of title to the number of shares it represented in the several transfers, or prevent this stock from merging with the assets of the Fisher Body Corporation—its identity was lost.

Congress intended to tax gains and profits and so provided. It made provisions for the postponement of the tax in certain in-

stances, designated as nontaxable transactions. Such provisions were not intended to relieve profits and gains from tax, but to postpone the tax until such profits and gains were realized upon final disposition. Here there was a final disposition of the stock petitioner received in exchange for its Fisher Body stock through a nontaxable transaction and, I think, the gain thus realized should be included in income.

I do not think that *Helvering* v. *Winston Brothers Co.*, 76 Fed. (2d) 381, relied upon in the majority opinion, is in point or is controlling here. There the stock received in exchange was canceled. The Board specifically said "such cancellation is not a 'sale or other disposition' of such stock as is referred to in section 113. The ownership did not pass to others."

Here there was clearly a sale or other disposition of the stock petitioner received for its Fisher Body stock and the gain realized is taxable under sections 202 and 203 of the Revenue Act of 1926. The gain petitioner derived is not immune from tax under article 543 of Treasury Regulations 69, on the theory that a corporation dealing in its own stock realizes no gain. Notwithstanding some of the early Board decisions and the regulations cited above, the later decisions of both the Board and the courts are to the effect that the real nature of the transaction in each particular case must be considered, and if the transaction is in connection with the assets of the corporation, of a commercial nature, or beyond the pale of capital transactions involving the capital structure, the gain or loss is recognized for tax purposes. *Commissioner* v. *Woods Machine Co.*, 57 Fed. (2d) 635, reversing 21 B. T. A. 818; certiorari denied, 287 U. S. 613; *Commissioner* v. *Boca Ceiga Development Co.*, 66 Fed. (2d) 1005, reversing 25 B. T. A. 941; *Houghton & Dutton Co.*, 26 B. T. A. 52; *Allyne-Zerk Co.*, 29 B. T. A. 1194; affd., 83 Fed. (2d) 525; *Spear & Co.* v. *Heiner*, 54 Fed. (2d) 134; affd., 61 Fed. (2d) 1030; *Dorsey Co.* v. *Commissioner*, 76 Fed. (2d) 339, affirming memorandum opinion of the Board not reported; certiorari denied, 296 U. S. 589.

The acquisition of General Motors stock in exchange for Fisher Body stock and the use of such General Motors stock to discharge petitioner's obligation to the General Motors Securities Co. had no more effect on the capital structure of petitioner than a sale or disposition of any other asset.

I submit that when petitioner used stock received in a nontaxable exchange for its Fisher Body stock, which had cost $31,254,825, to discharge an obligation that would otherwise cost $137,603,070 to procure the necessary amount of stock with which to satisfy it, petitioner realized a taxable gain to the extent of the difference.

TYSON, HILL, and MILLER agree with this dissent.

DISNEY, dissenting: The majority opinion seems to me to be based upon inconsistency, for the reason that what is termed a mere incident is utilized to defeat the deferment of taxation, which is inherent in and is the basic idea underlying the principle of nonrecognition of gain or loss in reorganization. The reorganization itself, in its very nature, would only defer taxation. In this instance taxation is definitely and permanently prevented, not merely deferred. Something outside the pale of reorganization must work this effect, since reorganization does not do so. Thus it appears that the so-called incident emerges as the controlling factor here. That it is outside of and no part of the reorganization is demonstrated not only by the fact that reorganization alone can not effect the tax-prevention result obtained by the majority opinion, but by the obvious fact that in order for the transaction between General Motors and the General Motors Securities Co. to be so completely a part of the reorganization as to be under the mantle of its nonrecognition of gain or loss, the General Motors Securities Co. must be a party to the reorganization—which beyond argument it is not, and I do not understand that anyone contends it to be. Thus it is discerned that a principle applicable to the reorganization only is extended to include a transaction which is no part of the reorganization and otherwise would demand our examination as to the applicability of the revenue law. I believe that such examination of the nature of the transaction between General Motors and the General Motors Securities Co. demonstrates that it entails such economic betterment as constitutes income. Mr. Arnold has set this forth in terms to which I subscribe. It will not do to dismiss this transaction under the appellation of mere incident, or with the categorical statement that shares were borrowed to be used for a few days and returned in kind. These shares were not merely used, but were wholly disposed of and were replaced by an equivalent. Had the stock obtained from the General Motors Securities Co. not been completely owned by General Motors, to be merged in the reorganization, it could not be said that it constituted stock or securities in a corporation a party to a reorganization, within the terminology and purview of the statute. Patently this was not merely use of the stock.

I believe, too, that analogy to a short sale leads to the same conclusion as above expressed, and denies the conclusion reached by the majority. The essential nature of a short sale has been well examined in *Provost* v. *United States*, 269 U. S. 443. It is there demonstrated that it consists essentially of two transactions, one between the buyer and seller, which is closed by the delivery of borrowed stock to the buyer, and one, succeeding the first, consisting of the incurrence of contractual obligation between the lender and borrower of stock, and

its satisfaction. It is in this transaction that the gain or loss occurs, for the buyer has been satisfied almost contemporaneously with the purchase, by the delivery of the borrowed stock, and with him the transaction is closed. Meyer on Stock Brokers and Stock Exchanges, p. 186. Plainly there is no appreciable profit or loss in that very brief transaction. It is in the "contractual relations", as Meyer terms it, between borrower and lender that the profit is made or loss is sustained. Referring to the situation immediately after delivery of the borrowed stock to the purchaser, *Provost* v. *United States, supra,* says:

> The original short sale is thus completed and there remains only the obligation of the borrowing broker, terminable on demand, either by the borrower or the lender, to return the stock borrowed * * *.

Montgomery on Federal Income Tax, p. 240, says:

> In the case of a short sale, the stock considered to be sold is the stock used to cover and close out the sale. The period this stock is held is the governing factor. * * *

In *Frances Bartow Farr, Executrix,* 33 B. T. A. 557, 559, we said:

> * * * The transaction *which originated in* the short sale may be closed by the return of stock purchased just for that purpose. This is called a "covering purchase." * * * [Italics supplied.]

The above expressions indicate plainly that the transaction taxed in connection with the short sale is the second transaction involved, i. e., the profit, if any, made in the return of the borrowed stock. The stock acquired to satisfy the lender is the stock, according to Montgomery, *supra,* which is considered sold, and it is significant that in the above quotation from *Frances Bartow Farr, Executrix,* reference is made not to the short sale, but to "The transaction which originated in the short sale." The profit or loss, obviously, depends upon whether the borrowing can be repaid by the expenditure of an amount more or less than the amount of the obligation to the lender. Montgomery's statement that "The period this stock is held is the governing factor" can mean nothing else.

It is true that in the *Farr* case, *supra,* relying upon but not quoting *Robert W. Bingham,* 27 B. T. A. 186, we said:

> The gain or loss from a short sale is ascertained by matching the short sale price against the cost or other basis of the stock used to close the transaction. * * *

In those cases, however, we did not have before us the present question, that of examining the precise nature of the obligation to the lender of stock, and no query was raised, in considering what amount was to be matched "against the cost" of the stock used to close the transaction, as to whether such amount was the price received from the purchaser, or the amount of obligation to the lender. In the light of

the *Provost* case, the proper amount is seen to be the latter, and the obligation to the lender appears as the basic factor. Ordinarily, short sale price (i. e., price paid by the buyer of the stock sold "short") and amount of obligation to the lender of stock are the same, calling for no distinction, since the stock is borrowed practically at the same time the short sale is made (ordinarily within 24 hours), so that no distinction was made in the *Farr* or *Bingham* cases. But herein it becomes important to ascertain what it is, in fact, that causes loss or gives rise to profit in the short sale, for if the cost of satisfaction of obligation to lender is the determining factor there, analogy to short sale should assist us here, since plainly there is such obligation to discharge in this case.

The General Motors Corporation entered into transactions essentially analogous to a short sale. On June 4, 1926, the contract between the General Motors Corporation and Fisher Body Corporation was perfected by acceptance, and thereupon the General Motors Corporation was just as much obliged to deliver 935,280 shares of its stock to the Fisher Body Corporation as is the short seller to deliver stock certificates to his purchaser. The General Motors Corporation did not own the necessary stock. It did not acquire such stock until June 23, when the necessary stock was acquired by "borrowing" from the General Motors Securities Co. This stock was effectually and wholly disposed of to the Fisher Body Corporation, in compliance with the contract between that company and the General Motors Corporation. The General Motors Corporation was obliged to return equivalent stock to the General Motors Securities Co. Meeker on Short Selling defines a short sale as a sale which creates a debt "in terms of goods." This seems exactly to describe the position of the General Motors Corporation with reference to the General Motors Securities Co. Equivalent stock was, in fact, later secured by the General Motors Corporation and the obligation discharged by the delivery thereof. At the date of such delivery, the value of the stock delivered was $137,603,070. This stock had been secured through a transaction with the Fisher Body Corporation, of such a nature that it took the base of the stock of the Fisher Body Corporation, which had been exchanged for it, to wit, a base of $31,254,825, which was therefore the cost of fulfillment of the obligation to return equivalent stock to the General Motors Securities Co. If the above analogy to a short sale is valid and ascertainment of profit and loss is logically based upon the fulfillment of obligation to the lender of stock, then we have, in the discharge of the obligation to the General Motors Securities Co., accrual of income and a taxable transaction.

*A. F. Osterloh,* 13 B. T. A. 713, was affirmed by the Ninth Circuit, in 37 Fed. (2d) 277. Therein Osterloh borrowed from Seiberling shares of common stock of the Goodyear Tire & Rubber Co., the original

shares to be returned, or, if borrower should be unable to do so, he would return cash or property in an amount equal to the fair market value of the stock at the date of receipt thereof. Osterloh used the stock as collateral, the value thereof declined, and as he was unable to pay his loans to certain banks, the stock was sold by the banks. He claimed a loss of the difference between what was realized out of the stock upon sale by the banks and the amount of the fair value of the stock when obtained by him.

The Board and the Circuit Court held, in effect, that he could not claim a loss until he had actually repaid the lender. The Board said that when the bank sold the stock, Osterloh "* * * became legally liable to Seiberling for the payment of a definitely ascertainable amount, because he could not return the stock unless he purchased it * * *."

There seems no essential difference in this respect between the position of Osterloh and that of the General Motors Corporation, for Osterloh was to return the borrowed stock, but, if unable to do so, would return in lieu thereof cash or property equal to fair market value of the stock. As the Circuit Court pointed out, "The obligation to return the original stock was absolute and unconditional, if in the power of the petitioner so to do." This was the same as the obligation of the General Motors Corporation. Osterloh could have done just as General Motors did—pay his obligation in property. Both the General Motors Corporation and Osterloh disposed of the stock borrowed, Osterloh by permitting it to be sold as collateral and the General Motors Corporation by assignment to the Fisher Body Corporation. Neither was able to return the stock. Either could return an equivalent (if obtainable)—at an expense of the price or outlay necessary to obtain it. Just as Osterloh "could not return the stock unless he purchased it" so the General Motors Corporation could not return the stock unless it purchased it—or, of course, otherwise acquired it. It did acquire the necessary stock, not by purchase, which would have taken $137,603,070 from its treasury, but by an exchange, and that which was received in exchange, and used for the satisfaction of this "debt in terms of goods", which was "of a definitely ascertainable amount" (the fair market value of the stock), was used to discharge the obligation. Its base was $31,254,825. I am unable to see why this transaction is not equally as taxable, upon the difference between the $31,254,825 base and $137,603,070 amount of obligation discharged, as was the loss of Osterloh deductible in the proper year. (The rationale of that decision necessarily is that the loss was in replacement of the stock or its value.) It is true that the amount of obligation in the *Osterloh* case was set as the value of the stock at the time of receipt thereof, whereas in the instant case, the

dissenting opinion of Mr. Arnold sets the amount of the obligation as the value of the stock upon the date of delivery. This, however, is a mere matter of contract between the parties, subject to any terms they may agree upon. The General Motors Securities Co. allowed the General Motors Corporation thirty days in which to return the equivalent of the stock, and plainly estopped itself from claiming return, or basing claim for damages in case of nonreturn, upon values at a date earlier than thirty days from delivery of the stock. The General Motors Corporation having a right to discharge its obligation, as it did, on July 1, the obligation is "definitely ascertainable" as the value of the delivered stock on that date merely because of the contract between lender and borrower. But regardless as to whether the amount of obligation is to be fixed at the date of borrowing of stock, or the day of return of equivalent, there is clear obligation. The difference is one only in amount, a detail not important to the general question here.

The General Motors Corporation, by the use of stock which had a base of $31,254,825, avoided an expenditure of $137,603,070, or avoided decreasing its surplus in that amount, in order to satisfy its obligation to the General Motors Securities Co. This transaction is separated by a clear line of cleavage from the reorganization with the Fisher Body Corporation, and the nonrecognition therein inherent can not logically be stretched to include the transaction with the General Motors Securities Co. That transaction was the conclusive and ultimate disposition of the proceeds of Fisher Body stock. There was, in fact, a saving and a profit to the General Motors Corporation in that transaction. In my opinion, it should be taxed. If transactions merely incidental to, but not a part of, a reorganization, can be brought within the nonrecognition provision, where are we to stop? The principle of nonrecognition within and as an integral part of reorganization is intended only to defer taxation because taxation would unfairly burden what is in fact a continuity of business. Without that principle, tax would be payable on the exchange between the Fisher Body Corporation and the General Motors Corporation. But I find it wholly impossible to believe that it should be used to prevent the incidence of tax in a matter neither in terms nor in logic within the reorganization.

Can it be doubted that there was economic betterment when stock costing $31,254,285 was substituted for stock of a definitely and easily ascertainable value of $137,603,070? There was obligation. It is immaterial whether it was in money or property. Its discharge was effected in a manner which saved the obligor some $107,000,000, in money or in stock of that value. Had it cost the obligor more than

$137,603,070 to replace the stock there would have been a deductible loss. The "short" seller deducts a loss taken on a rising market. Economic betterment giving rise to income can not in logic depend upon whether the transaction involves money, provided there is a "gain * * * derived from * * * dealings in property * * *", to use the statutory expression, and provided there is realization and not mere unrealized appreciation. Such gain can inhere in discharge of loan or bailment. Herein there was clear realization. I do not believe that the petitioner should be allowed through its arrangement with the General Motors Securities Co. to contract away the right of the sovereign to collect tax upon income, otherwise ultimately collectible. Such is the effect of that "borrowing" as viewed in the majority opinion.

The majority opinion observes that it is not necessary or proper to conclude how this reorganization may affect the taxes of the participants for future years. So far as the reorganization is concerned, its nature, intent, and effect are settled beyond cavil—it passes taxation to the future, and I can detect no impropriety in so noting or, rather, merely stating the law. Moreover, it is surely both necessary and proper to observe this inherent quality of reorganization, when the gain or loss in an "incidental" transaction indubitably outside the perimeter of the reorganization is identified as the same as that within it, and to reorganization is ascribed an effect which is the antithesis of its essential nature and object. The very *ratio decidendi* of the majority opinion requires the inquiry as to whether taxation is prevented, or whether it is only deferred. If it is prevented, reorganization has been exceeded. The transaction between the General Motors Corporation and the General Motors Securities Co. can not be infused into the reorganization without rendering relevant the inquiry as to whether a result is given which is contrary to the nature and effect of reorganization.

Finally, I suggest, on the principle of *Gregory* v. *Helvering*, 293 U. S. 465, that in order to get the benefit of nonrecognition of gain the General Motors Corporation must be shown in its transaction with the General Motors Securities Co. to be clearly within the intent of the reorganization statute. *Gould* v. *Gould*, 245 U. S. 151, holds:

In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. * * *

It is true that the above citation goes on to state that in case of doubt, statutes are construed most strongly against the Government and in favor of the citizen, and it is also true that the ordinary application of the above principle involves construction in favor of the taxpayer.

Nevertheless, the logic of the above language is equally applicable in a situation such as the one here at hand, where the taxpayer is, in effect, seeking to broaden the effect of a statute, that is, the reorganization statute. *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, lays down the rule:

Taxpayer, claiming deduction for losses suffered in earlier year, must point to specific provision of statute permitting deduction, and bring himself within its terms.

Exemption clauses are to be strictly construed. .We do not here have precisely the question of a deduction or exemption, but the basic idea in this case is the same as in those cited immediately above—the taxpayer seeking to except himself from the general terms of the taxing statute, or to bring himself within the purview of such a provision as nonrecognition of gain or loss entailed in reorganization, must show himself to be within that classification. It can not be said that the loan transaction between the General Motors Corporation and the General Motors Securities Co. is, under the statute and its obvious intent, any part or parcel of the reorganization with the Fisher Body Corporation. I dissent.