William H. Coverdale v. Commissioner.
William H. Coverdale v. Commissioner
Docket No. 3981.
United States Tax Court
1945 Tax Ct. Memo LEXIS 137; 4 T.C.M. (CCH) 713; T.C.M. (RIA) 45240; June 28, 1945
*137 In 1929, petitioner, a consulting engineer, became a member of a syndicate to buy some Seaboard Airline Railway Company stock. To finance his investment he borrowed money from New York and Canadian banks. During 1929, 1930 and 1931 he borrowed approximately $425,000 (Canadian) from The Royal Bank of Canada. At the time he borrowed the money Canadian and American dollars were of equal value. The market for Seaboard stock collapsed in 1929 and during the period 1930 to 1940 petitioner gradually paid off his loans and sold his stock. In March 1940 he owed The Royal Bank of Canada $290,037.32. He borrowed $237,165 from a New York bank and by virtue of the decrease in value of Canadian dollars bought enough Canadian dollars to pay his debt in full. In his income tax return petitioner reported the difference as a long-term capital gain. Respondent determined that it was ordinary income. Subsequently petitioner claimed an overpayment on the ground that no taxable gain was realized. Held, petitioner's debt was at all times in Canadian dollars which was the exact amount repaid. He performed his agreement and since foreign money is property he merely repaid property with property which could *138 not result in taxable gain. B. F. Goodrich Company, 1 T.C. 1098; General Motors Corporation, 35 B.T.A. 523; North American Mortgage Company, 18 B.T.A. 418. Held, further, that even if there was a gain in 1940 the whole transaction resulted in a loss and that under Bowers v. Kerbaugh Empire Co., 271 U.S. 170, minimization of petitioner's loss could not result in taxable income. James C. Mulligan, Esq., 20 Exchange Place, New York 5, N. Y., for the petitioner. Ellyne Strickland, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves an income tax deficiency of $21,808.12 for the year 1940. Petitioner, an individual, duly filed his income tax return with the collector of internal revenue for the third district of New York and reported as a long-term capital gain the result of his dealings in Canadian money. Respondent determined the deficiency by treating the amount reported as ordinary income. Petitioner now claims that this sum is not taxable, and in the alternative avers that the overall result of all his dealings therein was a loss, and that in either event *139 he is entitled to repayment of his tax. The facts have been stipulated. Findings of Fact The petitioner is an individual residing at 1020 Fifth Avenue, New York, N. Y., and having an office at 120 Wall Street, New York, N. Y.
Petitioner is, and at all times hereinafter mentioned was, a consulting engineer, a senior member of the firm of Coverdale & Colpitts, and not engaged in business as a dealer in foreign exchange. Petitioner's income tax return for the calendar year 1940 was filed with the collector of internal revenue for the third district of New York on March 15, 1941. The tax of $2,521.08 shown to be due thereon was paid by petitioner during the year 1941 in four installments. During the year 1929 petitioner was chairman of the board and a director of Seaboard Airline Railway Company, hereinafter called "Seaboard". Early in 1929 plans were discussed for the public sale, through Dillion, Read & Co. of New York, investment bankers and underwriters, of approximately 1,900,000 additional shares of Seaboard common stock, and petitioner was invited to become a member of a syndicate to underwrite the offering, hereinafter referred to as the "Underwriting Syndicate", which *140 invitation was accepted. The Underwriting Syndicate was not formally organized by the execution of a syndicate agreement until on or about Otcober 11, 1929, at which time petitioner signed the syndicate agreement and agreed to underwrite the purchase of 87,500 shares of Seaboard common stock at $12 per share. In entering into the Underwriting Syndicate petitioner acted in the hope and expectation of realizing profit. At the time of the execution of the syndicate agreement, Seaboard common stock was selling on the New York Stock Exchange at approximately $15 per share, but during the crash of security prices later in October and in November of 1929, the market value declined to approximately 75 cents per share. In December 1929 the petitioner was advised that he would shortly be required to make payment for a substantial majority of the shares of Seaboard common stock to which he had subscribed as a member of the Underwriting Syndicate. On January 9, 1930, the petitioner was notified that he would be required, on January 14th, to cover his commitment to the Underwriting Syndicate to the extent of $819,084 for 68,257 shares at $12 per share. From December 9, 1929 up to and *141 including January 13, 1930, the petitioner made the following borrowings: December 9, 1929 - $280,000.00 from Chemical Bank & Trust Company December 13, 1929 - $26,000.00 (Canadian) from The Royal Bank of Canada
January 13, 1930 - $225,000.00 (Canadian) from The Royal Bank of Canada January 13, 1930 - $675,000.00 from The National City Bank of New York All of these loans were collateralized by various securities and other assets owned by the petitioner. On January 14, 1930, in accordance with the requirements of the Syndicate agreement, petitioner paid to Dillon, Read & Co. the sum of $819,084, being the purchase price of 68,257 shares of Seaboard common stock at $12 per share, which shares were retained by Dillon, Read & Co. in accordance with the terms of the syndicate agreement. On or about November 3, 1930, the Underwriting Syndicate was liquidated and there were delivered to petitioner (a) certificates for 68,257 shares of Seaboard common stock, and (b) a reimbursement of $60,456.91. The reimbursement reduced the cost basis to the petitioner of the 68,257 shares from $819,084, or $12 a share, to $758,627.09, or approximately $11.11 per share. The petitioner sold *142 the 68,257 shares of Seaboard common stock received from the Underwriting Syndicate with a net cost basis of $758,627.09, as above set forth, and realized losses thereon as follows: Year
No. of Shares
Cost
Sale Price
Realized Loss
1930
25,000
$277,750.00
$37,500.00
$240,250.00
1931
20,000
222,200.00
19,375.00
202,825.00
1934
1,000
11,110.00
1,355.00
9,755.00
1940
22,257
247,275.27
3,378.89
243,896.38
68,257
$758,335.27
$61,608.89
$696,726.38
"Note: The discrepancy in cost basis between $758,627.09 and $758,335.27 of $291.82 is due to the use of $11.11 per share as the cost basis when it actually was $11,114.27 plus. The actual loss sustained is accordingly understated to the same extent." During 1930 and the early part of 1931, in view of steadily declining security prices, the three banks from which petitioner had made borrowings, were continually calling upon petitioner for reductions in the loans or for additional collateral, or both. On or about June 12, 1931, Chemical Bank & Trust Company, the loan from which had then been reduced to $175,000, demanded immediate repayment thereof, and the petitioner thereupon obtained *143 an additional loan in the amount of $175,000 (Canadian) from The Royal Bank of Canada and used the proceeds thereof to pay off the Chemical Bank & Trust Company. At the times when each of the borrowings from The Royal Bank of Canada was effected, Canadian dollars were substantially at parity with American dollars. From time to time the petitioner made payments to The Royal Bank of Canada on account of interest and principal of the loans in the same currency in which the loans were contracted, and that institution sold certain of the collateral securing the loans and credited the proceeds thereof against the indebtedness, with the result that, on or about March 21, 1940, the indebtedness of the petitioner to The Royal Bank of Canada amounted to $290,037.32 (Canadian). On or about March 21, 1940, the petitioner was able to and did obtain a loan from The Commercial National Bank & Trust Company of New York in the amount of $237,165, with which he purchased $290,037.32 (Canadian) and paid in full his indebtedness to The Royal Bank of Canada. In his income tax return for the year 1940 the petitioner reported as a long-term capital gain on assets held for more than 24 months the *144 amount of $52,872.32, being the difference between the amount realized in American dollars ($290,037.32) from the borrowed Canadian dollars and the number of American dollars ($237,165) necessary and used to buy Canadian dollars to repay the petitioner's outstanding indebtedness to The Royal Bank of Canada on March 21, 1940. In determining the deficiency at issue herein the respondent treated the amount of $52,872.32 as ordinary income and not as a capital gain. The petitioner concedes that the deduction of $703 for certain charitable contributions, as set forth in the notice of deficiency, was properly disallowed by the respondent. Opinion The sole issue in this proceeding is the effect for tax purposes of petitioner's transactions as hereinabove set forth. Petitioner claims that under our decision in , he realized no taxable gain from his transactions in Canadian dollars which culminated in March 1940. As a second ground for resisting respondent's claim, he avers that the overall results of his dealings in Seaboard stock were a loss of nearly $700,000, and that under , *145 the minimizing of his loss did not result in taxable income. As corollary to this position petitioner claims that the net result was a reduced cost basis for his stock, a reduction of the purchase price in effect, and therefore nontaxable under . Respondent claims that the Goodrich case, in which he has acquiesced, is distinguishable. As to the balance of petitioner's argument respondent says that the record is insufficient to support petitioner's claim that his case fits within the limits of , and that in any event that decision has been so limited in recent years that it can not be authority for petitioner's position. As a third ground respondent argues that petitioner discharged a debt by payment of a lesser sum than required under circumstances outside the application of the rule in , and that under , the petitioner has realized a taxable gain. As to the last argument we think that the Kirby Lumber Co. case has no application here. There was no payment of less than *146 the face amount due. The contract between petitioner and The Royal Bank of Canada was not modified and petitioner repaid exactly what he agreed to pay. Nor are we convinced by respondent's suggestion that the Goodrich case is distinguishable. On the contrary it appears to us that petitioner's dealings with The Royal Bank of Canada differed in no material way from the dealings of B. F. Goodrich Company with the Paris bank. In each case there was a borrowing of foreign currency which at the time had a set purchasing power in American dollars. In each case the taxpayer repaid the borrowings with the identical amount of currency borrowed at a time when the purchasing power of that currency was lessened and at a reduced cost to him as measured in United States currency. At all times petitioner's debt to The Royal Bank of Canada was in Canadian dollars. He repaid exactly what he owed. He abided by his agreement to repay property for property borrowed and the contract between the parties was never changed. Admittedly petitioner benefited by the transaction but not every benefit can result in taxable gain. Cf. ; cf. . *147 We have consistently held that a borrowing and returning of property can not result in taxable gain. ; . Petitioner's indebtedness to The Royal Bank of Canada was always expressed in terms of property by United States standards. The fact that petitioner was able to repay his debt at a reduced cost to him can not change the result. We hold on the authority of , that petitioner realized no taxable gain under the circumstances herein set forth. What we have said renders it unnecessary to consider the applicability of the Bowers v. Kerbaugh Empire case. Factually, however, it would appear that the case can not be distinguished. It is obvious that petitioner's dealings in Seaboard stock resulted in a loss which loss was finally determined in 1940 by the disposition of the last of the holdings acquired from the Syndicate in 1929. The net effect of petitioner's advantageous transaction with The Royal Bank of Canada in 1940 was to reduce his loss. But aside from or in addition to the principle *148 of the Goodrich case on which we base our holding, we think respondent's determination is erroneous because the overall result of petitioner's dealings with the Seaboard stock resulted in a loss and on the authority of , he could not and did not realize a taxable gain. Decision will be entered under Rule 50.