**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1681 & 22-1034
_____

AMY PATRICK, M.D.

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,
                                                                            Appellant

_____

On Appeal from the United States District Court for the
District of Delaware

(District Court No. 1-19-cv-02106)

District Judge: Honorable Colm F. Connolly

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 21, 2023


(Filed:  November 8, 2023)

Before:  RESTREPO, McKEE, RENDELL, *Circuit Judges*.
_____

O P I N I O N*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Defendant-Appellant Reliance Standard Life Insurance Company ("Reliance") challenges the District Court's grant of summary judgment awarding benefits to Plaintiff-Appellee Amy Patrick, M.D., in this Employee Retirement Income Security Act of 1974 ("ERISA") action. The District Court concluded that Reliance's classification of Dr. Patrick as an Internal Medicine Specialist and resulting termination of her disability benefits were arbitrary and capricious. We agree and will affirm.

## I.

Dr. Patrick is a Gastroenterologist with Mid-Atlantic G.I. Consultants, P.A. ("MAGIC"). She lost partial use of her right shoulder after surgery and began receiving long-term disability benefits from her insurer, Reliance, in 2009. In 2019, notwithstanding Reliance's having paid her benefits for a decade based on her inability to perform her duties as a Gastroenterologist, Reliance determined that Dr. Patrick was no longer entitled to benefits because her disability did not prevent her from performing the regular duties of an Internal Medicine Specialist.

A brief history is required to understand this appeal. In November 2008, when Dr. Patrick first submitted her disability claim, Reliance conducted a "vocational review." The vocational expert concluded that Dr. Patrick's Regular Occupation under the Department of Labor's Dictionary of Occupational Titles ("DOT") Code was an "Internal Medicine Specialist." The vocational expert referenced nothing but the DOT Dictionary to make this determination.

2

Dr. Patrick's disability insurance policy ("Policy") defines Regular Occupation as follows:

> "Regular Occupation" means the occupation the Insured is routinely performing when Total Disability begins. We will look at the insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale.

App. 76.

Concurrent with the vocational review, Reliance requested a job description from Dr. Patrick. She provided a six-week schedule during which about a quarter of her hours per week were spent performing endoscopic procedures. A letter from Dr. Patrick's employer to the insurance company also explained that Dr Patrick "is a full-time Gastroenterologist. Her daily routine involves a combination of highly demanding physical (endoscopic procedures) and cognitive activities." App. 109.

In 2009, Reliance approved Dr. Patrick's claim and began paying benefits for Partial Disability. Under the policy terms, Dr. Patrick was considered Totally Disabled. Reliance's internal records from 2009 confirm that Dr. Patrick's "major problem was she lacks endurance to perform colonoscopy and gastroscopy." App. 203.

In December 2018, Reliance requested that Dr. Patrick provide updated evidence of her disability. Accordingly, Reliance requested an updated Attending Physician's Statement ("APS") from her current doctor, Dr. Charles Jobin. On December 18, Dr. Jobin returned the APS stating that he was treating Dr. Patrick's *left* shoulder for Left Scapulothoracic Bursitus, and that she may return to work with no restrictions. Shortly thereafter, on January 22, 2019, Reliance sent Dr. Patrick a note explaining that, in light

3

of Dr. Jobin's evaluation that Dr. Patrick could return to work, it no longer considered her eligible to receive disability benefits.

In March 2019, Dr. Patrick administratively appealed Reliance's decision, and attached a sworn declaration to her appeal from Dr. Jobin, which confirmed, in relevant part, that he was only considering Dr. Patrick's *left* shoulder when he filled out the APS and that he concurred with the prior diagnosis that Dr. Patrick could no longer perform GI procedures full-time.

In August 2019, Reliance notified Dr. Patrick by letter that the claim decision was being upheld, because a review of her medical condition by a third party found she was indeed qualified to perform the duties of her regular occupation—her regular occupation being Internal Medicine Specialist, *not* Gastroenterologist.

Reliance's characterization of Dr. Patrick as an Internal Medicine Specialist—and specifically, termination of benefits based on that characterization—form the basis of this appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 1001-1461. We have jurisdiction under 28 U.S.C. § 1291 and § 1292(a)(1).

The District Court reviews a challenge to a denial of benefits under ERISA using the abuse of discretion (or arbitrary and capricious) standard when the plan administrator maintains discretionary authority over plan interpretation and eligibility determinations. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Reliance maintains such discretionary authority. Under the arbitrary and capricious standard, the Court may

4

overturn an administrator's denial of benefits if "it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). The Court should defer to the administrator's reasonable interpretation of ambiguous plan language; however, the administrator's interpretation may not conflict with the plain language of the plan. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012); *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.2d 381, 385-86 (3d Cir. 2003). We review the District Court's grant of summary judgment de novo. *Miller*, 632 F.3d at 844.

## III.

Reliance's argument, at its core, is as follows: Reliance reasonably interpreted "Regular Occupation" to mean only occupations found in the DOT, as those are the only occupations that exist in the national economy. Reliance argues that because Gastroenterologist is not a listing in the DOT, it was reasonable for Reliance to assign Dr. Patrick the "Regular Occupation" of Internal Medicine Specialist, even though she is neither practicing as an Internal Medicine Specialist nor is she even board certified to practice internal medicine. And finally, Reliance contends that because Dr. Patrick's shoulder injury only impacts her ability to perform endoscopies and similar procedures performed by Gastroenterologists—not her ability to perform the tasks required of an Internal Medicine Specialist—it was reasonable for Reliance to find that she is neither Partially nor Totally Disabled under the policy and thus no longer qualifies for disability benefits.

5

The District Court granted summary judgment to Dr. Patrick because it found the above determinations and subsequent termination of benefits "unreasonable, unsupported by substantial record evidence, and in conflict with the policy's unambiguous terms." App. 29. We agree.

The District Court reasoned that Reliance's determination that Dr. Patrick's "Regular Occupation" is that of an Internal Medicine Specialist is "contrary to the plan's plain language" and should be rejected. *Lasser*, 344 F.2d at 385. The term "Regular Occupation" is defined by the Policy as follows:

> "Regular Occupation" means the occupation the Insured ***is routinely performing when Total Disability begins***. We will look at the insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale.

App. 76 (emphasis added). As the District Court found, the record is replete with evidence that Dr. Patrick is a Gastroenterologist: Dr. Patrick's training, employment history, board certification, and even Reliance's records of Dr. Patrick's disability support the finding that occupation she routinely performed when her Total Disability began was that of a Gastroenterologist.[1] Indeed, at the time Reliance began paying Dr. Patrick benefits, she was not even board-certified to practice internal medicine. The District Court concluded that neither the plain language of the Policy nor the record

---

[1] In prior ERISA litigation with Dr. Patrick, Dr. Patrick was described as a Gastroenterologist. Reliance never objected to this characterization.

6

evidence supports Reliance's determination that Dr. Patrick's Regular Occupation was that of an Internal Medicine Specialist.[2]

Reliance's reasoning that the inclusion of "national economy" language in the Policy restricts "Regular Occupations" to those in the DOT is unreasonable and untenable. Reliance correctly states that we have recognized the DOT as a valuable tool when evaluating disability claims. *E.g.*, *Boone v. Barnhart*, 353 F.3d 203, 206 (3d Cir. 2003); *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). However, neither *Boone* nor *Burns* involved ERISA, and in both the DOT is used simply as a resource to understand which jobs exist that the social security claimant can perform. *Boone*, 353 F.3d at 206; *Burns*, 312 F.3d at 119. The DOT does not function as an exclusive list of jobs that exist in the national economy, and it is unreasonable to treat it as such. *Lasser*, 344 F.3d at 387 n.5 ("[T]he DOT's silence . . . makes the DOT unhelpful and thus, to the extent that Reliance's conclusion is based on the DOT's definition . . . that conclusion is unreasonable."). As the District Court rightly observed, "Reliance cites, and I know of, no ERISA provision or court decision that precludes the recognition of an occupation not

---

[2] Reliance purports that the Court must accept the "one expert vocational opinion" in the record and find it reasonable that Reliance classified Dr. Patrick as an Internal Medicine Specialist, as "there is no contrary opinion in the record." Br. of Appellant 29-30. The expert vocational opinion, however, is based solely on the DOT definitions and demonstrates no consideration of the record before it at the time, which included Dr. Patrick's actual work responsibilities and job description. Further, Reliance misrepresents the record here, which contains myriad evidence of Dr. Patrick's occupation as Gastroenterologist.

listed in the DOT. And it offers, and I can think of, no reason why such a rule should exist." App. 33.

Both parties rely heavily on *Lasser*, so we discuss that opinion here. In *Lasser,* Reliance similarly denied benefits to a doctor after attempting to recharacterize his occupation, in part because DOT did not list "Orthopedic Surgeon" as an occupation. *Lasser*, 344 F.3d at 387 n.5. The *Lasser* Court expressly rejected this approach, finding that Reliance's termination of benefits was arbitrary and capricious. *Id.* at 392. Reliance urges that this case is distinguishable from *Lasser* because here, Dr. Patrick's Policy defines Regular Occupation to be "as it is normally performed in the national economy," App. 76, whereas the policy at issue in *Lasser* did not define Regular Occupation at all. But here, the District Court's determination that the decision to cease paying benefits was arbitrary and capricious was based in part on the fact that Reliance determined that Gastroenterologist is not an occupation in and of itself, solely because Gastroenterologist is absent from the DOT. We agree with the District Court that this notion is "ridiculous." App. 33. Reliance cannot escape the obvious conclusion that Dr. Patrick is a Gastroenterologist by relying on the "national economy" language in the Policy.

Reliance's other challenges fail as well. Reliance argues that the District Court improperly found in favor of Dr. Patrick based on Reliance's past practices. Then, Reliance points to one footnote in the District Court's opinion to argue that the District Court improperly cherry-picked from the Policy to grant Dr. Patrick summary judgment. Neither argument persuades us. As we describe above, the District Court properly relied primarily upon the plain language of the Policy and the record evidence.

8

Finally, Reliance does not challenge the District Court's award of fees and costs on any basis other than that the Court erred in granting summary judgment. Because we agree with the District Court that summary judgment in favor of Dr. Patrick was proper, we will also affirm the fees and costs award.

IV.

For these reasons, we will affirm the District Court's order.